JOSEPH A. BRODERICK, as Superintendent of Banks of the State of New York, Plaintiff, *v.* MAX AARON and Others, Defendants, Impleaded with WILLIAM A. GREER and Others, Copartners, Doing Business under the Firm Name and Style of GREER, CRANE & WEBB, Respondents, and JAMES K. RICE, JR., and Others, Copartners Doing Business under the Firm Name and Style of J. K. RICE, JR., & Co., Appellants.*

First Department, January 26, 1934.

* Revd., 264 N. Y. 368.

*Samuel B. Stewart, Jr.,* of counsel [*William F. Sullivan* with him on the brief; *Cravath, deGersdorff, Swaine & Wood,* attorneys], for the appellants.

*Carroll G. Walter* of counsel [*James Lee Kauffman* with him on the brief; *Patterson, Eagle, Greenough & Day,* attorneys], for the respondents.

*Arthur Ofner* of counsel [*Warren C. Fielding* and *Isadore H. Cohen* with him on the brief; *Carl J. Austrian,* attorney], for the Superintendent of Banks, as *amicus curiæ.*

MARTIN, J. Pursuant to sections 80 and 120 of the Banking Law, the Superintendent of Banks brought this action to recover an assessment against stockholders of the Bank of United States. The defendants, respondents, were named as defendants upon an allegation that they were the owners and record holders of thirty shares of the stock. The respondents impleaded the appellants under Civil Practice Act, section 193, subdivision 2, upon the ground that prior to the closing of the bank they had sold the thirty shares to the appellants, who admit the purchase thereof, but claim that they immediately resold the stock to Levy Brothers, who were named as original defendants by reason of the fact that they were the owners of record of other shares.

The impleaded defendants contend that because of such resale they are not liable, either directly to the plaintiff or by way of reimbursement, for any amount the respondents may have to pay to the plaintiff. The appellants moved for summary judgment dismissing the respondents' cross-claim against them, and this appeal is taken from the order denying that motion.

The respondents contend that the facts stated in the moving affidavit show, as matter of law, that appellants had not resold the particular shares purchased by them from respondents, and that even if they had resold those shares, they nevertheless are bound to indemnify respondents.

The litigation entitled Broderick v. Aaron, out of which indirectly this separate controversy arises, involves the liability of some fifteen thousand stockholders, defendants, who, with comparatively few exceptions, are holders of record of stock of the Bank of United States.

The Superintendent of Banks, who appears here in the capacity of *amicus curiæ,* points out that the liability in approximately a thousand or more instances rests solely upon the appearance of names upon the stock ledger of the bank, as distinguished from actual or beneficial ownership of the stock itself. Of the record holders placed in this position, several hundred have impleaded other

holders and demanded reimbursement against them. Of those, some have impleaded their immediate vendees as well as the apparent actual owner of the stock at the time of the closing of the bank; others have joined the apparent actual owner only, at that time; and finally, others have brought in both immediate and mesne vendees and the ostensible ultimate owner. The balance of these one thousand or more record stockholders, although pleading a resale of their stock, have not resorted to impleader, because of inability to identify the actual owner.

Under section 120 of the Banking Law the record owners as well as the actual or equitable owners of shares of bank stock are liable. It is clear that, other than the stock ledger, the Superintendent of Banks has no record or other source of information of the identity of the actual owner, and must rely upon material disclosed through investigations conducted by him and such chance facts as may come into his possession.

The Court of Appeals in *Johnson* v. *Underhill* (52 N. Y. 203) established the proposition that a record owner of stock, who had been subjected to a liability by reason of the stock being registered in his name, is entitled to reimbursement from the person to whom he sold the stock. That case appears to have been cited with approval and followed on a number of occasions. It was there held that a purchaser who received under the contract of sale a certificate of shares, with power of attorney to transfer them to his own name upon the books, is liable to the seller for any debts thereafter incurred by the corporation, which the seller is obliged to pay by reason of his name still remaining on the books as the apparent owner.

The Appellate Division, Third Department, in 1920 in the case of *Gaffney* v. *People's Trust Co.* (191 App. Div. 697; affd., 231 N. Y. 577), held that in an action by a stockholder of record of an insolvent trust company to recover from the executor of the actual owner of the shares of stock the amount paid as his statutory liability, the plaintiff is entitled to recover on proving a transfer of the certificate in blank, a delivery thereof to testator, and that it remained in his possession until the time of his death, and is now in the possession of the executor.

The appellants contend that the case of *Richards* v. *Robin* (175 App. Div. 296; affd., 225 N. Y. 719) is to the contrary. That case was decided on a totally different state of facts and relates to an entirely different subject. There the purchasers of the bank stock were a firm of stockbrokers purchasing for a customer. They bought the stock at auction as agents and turned it over to their principals. The original sale was in March, 1910. The following

December, 1910, the bank whose stock was the subject of the sale became insolvent. The original seller was still the holder of record on the books of the bank. The stock had not alone been passed on by the brokers to their principals, but they in turn had passed it on to several other people. The owners of record were charged with their statutory liability and they in turn brought an action against the purchasers. The court held that the stockbrokers, acting as agents, were not liable. This was simply a case where the plaintiff sued the stockbrokers as agents.

It is significant that the court in *Johnson* v. *Underhill* (*supra*) cited several English cases that have expressly held that the vendee is liable to the stockholder of record. The English courts have thoroughly considered this matter and several very able opinions have been written on the subject.

In *Kellock* v. *Enthoven* (L. R. 8 Q. B. 458 [1873]) BLACKBURN, J., writing for the court, said: " Even if *Roberts* v. *Crowe* [L. R. 4 Ch. 58] did not decide the matter, I think it is clear upon the authority of *Walker* v. *Bartlett* [18 C. B. 845], and also upon general principles, that when there was the contract to purchase the shares from the vendor, there was also an implied contract that the vendee would hold the vendor harmless from all the burdens of the property which he had taken from the vendor. The transferee, who is the purchaser of the property, was to get all the benefits as long as the possession of the property was beneficial; and I think the law implies from that, that the purchaser contracts to indemnify the transferor against all the burdens of the property which he, the transferee, has taken. That being so, I do not think that that liability is got rid of by the purchaser passing over the property to another, who would enter into a similar contract of indemnity as between him and his immediate vendor. . I do not see how that relieves the defendant from the contract to indemnify the plaintiff."

In the same case, ARCHIBALD, J., said: " With regard to the first point, I think it is clear that the contract of indemnity must extend to relieve the transferor, as between him and the transferee, entirely from future burthens of the property. The very reason of the thing seems to be in accordance with that view, because the transferor parting with the whole benefit of the shares and transferring that to the transferee, as between him and the transferee the only implication must be that the transferee is to hold the transferor harmless as regards all future calls. The Legislature has left him liable to the company primarily for a year after the transfer, but that does not affect the question as between transferor and transferee. Therefore, both upon reason and on the decisions, the point

is perfectly clear, that though the transferee has transferred to somebody else, he cannot by that means get rid of his liability to his transferor."

When *Kellock* v. *Enthoven* (*supra*) was affirmed (L. R. 9 Q. B. 241 [1874]), Lord COLERIDGE in a concise opinion stated the grounds as follows: " I apprehend the rule of law to be that, if there should be twenty mesne transferors between the first holder and the last holder, who are all liable because they have been holders of the shares within the year, if the company choose to demand payment of any one of them, he would be bound to pay, and would have a right to come on his immediate transferee and say, 'As between you and me, when I parted with the shares to you, the *implied contract* was, that you would discharge in respect of them all *liability* that might arise during the time of your holding. This is a liability which arose during the time you held the shares, *though the call was not made till after you had parted with them.* You may have some further remedy against somebody else, but as between you and me that was *the contract.* I have had to pay and you must repay me.' That seems to me to be the short and simple ground on which this case may be decided, and that is the ground on which the Court of Queen's Bench based their judgment. I think that they are right, and that upon both points the judgment below ought to be affirmed."

It seems to be the settled law of this State, fortified by a number of important English decisions, that when a stockholder of record who has sold his stock is held to a statutory liability solely because of the fact that he is a stockholder of record, he may in turn recover the amount for which he has been held liable from the purchaser of the stock. This rule is based upon contract, upon the ground that where a party who purchases the stock under his contract receives all the benefits which go with that stock, he must also accept the burdens that follow actual ownership. The record owner is not permitted to accept the benefits accruing to such stock simply because he is a record owner, where he has parted with the stock. It would, therefore, seem to be unfair to charge him with the liability and allow the party to whom he had sold the stock to reap all the benefits.

The reasons for the rule are well expressed in the cases holding the vendee liable and it would be mere repetition to restate them in this opinion.

While it is true that there are cases such as *Humble* v. *Langston* (7 M. & W. 517) holding to the contrary, they appear to have been entirely overruled. (See *Spencer* v. *Ashworth, Partington & Co.,* [1925] 1 K. B. 589, 600, 602.)

There is no duty resting on any vendor to see that a record transfer of the stock is made and the failure to do so does not defeat the right of the vendor to recover from the vendee.

We are of opinion, therefore, that the order should be affirmed, with twenty dollars costs and disbursements.

FINCH, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Order affirmed, with twenty dollars costs and disbursements.