If the appellant, Johnson, was not legally liable to the plaintiffs in the actions in which judgments were obtained against him, then he has no cause of action against the respondents; for there was never any obligation or duty to him from Underhill, to protect him against unfounded claims.
It is, then, first to be determined whether such liability existed.
The general act for the formation of manufacturing corporations (Laws of 1848, chap. 40, p. 54) is somewhat peculiar in its provisions.
There is manifest throughout it an intention to hold the stockholders to a liability more stringent than was ordinarily imposed upon the owners of stock in corporations. Thus, in section eight it is provided that no shares shall be transferable, until all previous calls thereon shall have been fully paid in, or until they shall have been declared forfeited for the non-payment of calls thereon. In section ten it is provided that all stockholders shall be severally individually liable to the creditors of the company, to an amount equal to the amount of stock held by them respectively, for all debts and contracts made by the company, until the whole amount of the capital stock shall have been paid in. By section fourteen nothing but money shall be considered a payment of any part of the capital stock, and no loan of money shall be made to any stockholder. By the sixteenth section pledgees of stock, and persons holding stock in their capacity of administrators or executors or trustees or guardians, are not personally subject to liability as stockholders; but the pledgors are still holden, and the funds of the estates or of the cestuis que trust are liable. *Page 207 
And the eighteenth, one of the sections with which we are the more particularly concerned in this action, is in these words: "The stockholders of any company organized under the provisions of this act shall be jointly and severally individually liable for all debts that may be due and owing to all their laborers, servants and apprentices, for services performed for such corporation." And the nineteenth section, while it reserves in the legislature the right to annul any incorporation formed under the act, also provides that the remedy given against stockholders shall not be thereby impaired.
There are other provisions to the same end, of security for creditors, which may be referred to without particular mention: §§ 12, 13, 20, 23.
This act, passed in 1848 so soon after the adoption of the Constitution, was framed undoubtedly in obedience and under the influence of the requirements of art. 8, sections 1 and 2 of that instrument, enjoining the passage of general laws for the formation of corporations, and providing that: "Dues from corporations shall be secured by such individual liability of the corporators and other means as may be prescribed by law."
The eighteenth section, above quoted, of course means to hold liable those stockholders who are shown to be such at the time when the debts are due and owing. And the burden of proof is upon him who sues, to show that there is a debt due and owing for services performed for the corporation, by a laborer, or a servant, or an apprentice; and that the person sued is, when the debt is due and owing, a stockholder of the company.
Another section of the act (§ 25) has provided an easy mode of proof of who is a stockholder. By that section it is made the duty of the trustees of the corporation to keep a book. The book shall contain the names, alphabetically arranged, of all persons who are or shall have been, within six years, stockholders of such company, and the time when they respectively so became.
By the same section this book is made presumptive evidence *Page 208 
of the facts therein stated, in favor of the plaintiff, in any suit against any stockholder.
Now it appears from the case, that the Hudson River Slate Company was a corporation formed under the provisions of this general act. It also appears that, at a certain time, there were debts due and owing from that company to certain persons, laborers, for services performed for it.
So far as the questions raised in this case are concerned, naught else needed to appear, to make the plaintiff individually and severally liable for these debts, than that he was at that time a stockholder of that company. The proper books of the company furnished the presumptive evidence of this.
On them, as the case shows, he did appear to be at that time a stockholder of the company. He undoubtedly, if such had been the fact, could have shown in rebuttal of this presumptive evidence, that he had never been a stockholder. It does appear in the case that he had, at that time, sold his stock to the testator of the respondents. But having once been a stockholder, it could not avail him to show that he had sold and assigned his stock to another, and had given to that other all the usual and necessary means of making a valid and effectual transfer of it to himself upon the books of the company, if in truth such transfer had never taken place thereon. For by section twenty-five, above cited, it is provided that no transfer of stock shall be valid for any purpose whatever until it shall have been entered in the book above mentioned, in accordance with that section, and by an entry showing to and from whom transferred. This declaration of the invalidity of any transfer of stock, unless it is made in the manner indicated, seems to be in aid of the evident intent of the statute to protect the creditors of a company formed under it, by giving to them the several and individual liability of the respective stockholders. It meant not only to make all stockholders thus liable, but also to provide the means to the creditors of easily learning who were the stockholders at any time, and of easily showing the fact; and still further, to hold any one ever a stockholder to a continued *Page 209 
liability, unless there should be put upon the proper book the entry which should show when he ceased to be a stockholder, and to whom he had transferred his stock. There is but one exception in terms to this general provision. And that is one which carries still further the intention of the act, by making the transferree of the stock also liable to creditors, in accordance with the provisions of the act. The language, "And no transfer of stock shall be valid for any purpose," is very broad and comprehensive, if taken by itself apart from the particular section (§ 25) and connection in which it is found. We think that it should be confined in its application to the objects sought by that section, which are the security and ease of remedy of creditors, and the information of stockholders and creditors. The act had, in section eight, already provided that the stock should be deemed personal property, and be transferable in such a manner as should be prescribed by the by-laws of the company, and the twenty-fifth section is not meant to conflict with this in the general. The language above quoted is broad enough, to prevent the assignee of stock in good faith and on payment of value, from acquiring any title to it, if the language be taken by itself. But it is followed immediately by the exception to it: "and no transfer of stock shall be valid for any purpose, except to render the person to whom it shall be transferred liable for the debts of the company." It is not to be supposed that the legislature meant to impose a liability where it permitted no right to be acquired. It meant to guard against secret and unavowed sales and assignments of stock, to the harm of creditors and co-stockholders, by holding the vendor still liable until the transfer of his stock was avowed and made known in the mode prescribed, and to hold the vendee also liable as the real owner. It recognized the title of the latter to that extent, and thus recognized rights as between him and his vendor. So that the vendor of stock in reality assigned, but not transferred in legal form, was in effect but the nominal holder; both vendor and vendee were primarily liable to creditors of the company, in accordance *Page 210 
with the provisions of the act; and each liable to the other in accordance with general legal rules. (See Com. Bk. of Buff. v.Kortright, 22 Wend., 348, Ct. of Errors; Bk. of Attica v.Smalley, 7 Cow., 770; Gilbert v. Manch. Ir. Man. Co., 11 Wend., 627.)
It would have been of no avail, then, for the appellant to have contested by a trial the actions brought against him for debts due and owing by the company to laborers. For what would have been the course of the trial? The plaintiffs in the action would have proven, as they did, the existence of the debts, their ownership thereof, and the facts showing their right of action against a stockholder therefor. (§ 24.) They would have then produced the book required by the twenty-fifth section to be kept by the company, and would thus have made presumptive evidence that the appellant was at the time a stockholder. Proof by him that he had sold and assigned his stock would have been unavailing and immaterial. Within the statute, it was not a valid transfer for any such purpose for his relief.
The law and the facts rendering that defence impossible to him, he was under no duty to the respondents' testator to attempt one. He had done all that could be required of him, when he gave notice that claims were made against him, and actions commenced, and had given Underhill the opportunity of defending against them. (2 Philips on Ev., p. 7 [margin]; Cow. Hill's Notes, note 253, and cases there cited; Bridger v. Pierson,
45 N.Y., 601-603.)
When, after that, he from the necessity of freeing his property from incumbrance and from sale, paid the judgments against him, his right of action against the respondents' testator was complete. For we are of the opinion that, under the operation of this twenty-fifth section, when the appellant sold and assigned the stock, his transferree assumed a position to the appellant analogous to that of a principal to his surety, or of a cestuique trust to his trustee. Ordinarily, when the holder of stock sells it, and delivers to the vendee the certificate therefor, with an executed power of *Page 211 
attorney to transfer upon the books of the company, the vendee becomes the owner of all title, legal and equitable, thereto. (McNeil v. Tenth National Bank, 46 N.Y., 325.) But until the transfer upon the books is in fact made, the vendor is still the nominal owner; and he is, while such, to be treated as the trustee of the stock for his vendee. (Commercial Bank ofBuffalo v. Kortright, 20 Wend., 91; and 22 id., 348.) This is quite as much so, under the peculiar provisions of this section of this act.
We have no doubt but that the testator of the respondents, when he received from the appellant, in pursuance of a contract of sale, the certificate of the shares, with the power of attorney to transfer them into his own name, became liable to the appellant for any debts thereafter incurred, which the latter should be obliged to pay by reason of his name still remaining as that of the apparent owner thereof.
Underhill was a trustee of the company. He is chargeable with knowledge of the provisions of the act under which it was organized, and with the liability which fastened upon Johnson as an ostensible stockholder.
Text-books of acknowledged authority say: "If a person accept anything which he knows to be subject to a charge or duty, it is rational to conclude that he meant to take the charge or duty upon himself; and the law may very well imply a promise to perform what he has so taken upon himself." (Broom's Legal Maxims, 677-680, citing Abbott on Shipping [5th ed.], 286.)
In Burnett v. Lynch (5 Barn Cres., 589) it was held, that where one took an assignment of a lease from the lessee, subject to the payment of the rent and the performance of the covenants, that though there was no express contract to pay and to perform, yet the assignee had made it his duty so to do; and the law would imply a promise thereto, as arising out of that duty. That case, it is contended, is not analogous to the one here; in that here, the vendee of the stock did not take it in terms subject to the performance of any obligation of the vendee. *Page 212 
In Walker v. Bartlett (86 Eng. Com. L.R., 844), in whichBurnett v. Lynch (supra) is cited and relied upon, and where shares were sold, and an assignment thereof made by the delivery to the vendee of a transfer paper signed by the vendor, it was held that there was an implied contract upon the part of the defendant to indemnify the vendor against calls made upon the shares, while they remained the property of the vendee.
In that case, also, there was in the instrument of transfer an agreement to take the shares subject to the rules of the company, which provided for calls.
Those cases differ from the one in hand, in the provisions in the assignment of the lease and the instrument of transfer of the stock respectively, above noticed.
Without seeking to determine how much or how little, the decision of those cases was made to depend upon the presence of those provisions in the instruments by which the defendants became related to the plaintiffs, this is plain, and is noticed in the decisions, that in those instruments there was no express contract by the defendant to become liable to the plaintiffs. The duty or obligation or promise of the defendants to save the plaintiff from liability, was held to be implied by the law from the transaction; and such must be the result even in the absence of any such provision. The vendee does, in all cases of sale and transfer to him, take the shares with a right to all the benefits attached to or growing out of them; and this from the mere fact of the sale and transfer. And so, from the same fact, he takes them subject to all the burdens and liabilities attached to or growing out of them. And so the law will imply a duty, obligation or promise from him to the vendor, that those burdens and liabilities shall not come upon the latter. And we find the common-law courts in England holding thus. See Grissell v.Bristowe (3 Com. Pleas, Law Rep., 112), decided in 1868, where it is said: "The very object and essence of the transaction was, that the shares should pass from the vendor; and in such a contract of sale of shares, it seems to us that it *Page 213 
must be implied that the plaintiff would execute and deliver a transfer to the defendants or their nominees, and that, on the other hand, the defendants would pay the price and accept and register a transfer of the shares, and with a further undertaking, that the defendants would indemnify the plaintiff against calls which the plaintiff might be called upon to pay, if, and so long as, the transfer was not registered. The very essence of a contract of sale and purchase in the case of shares is, that one party shall divest himself of, and the other acquire, in the name of himself, the ownership of the shares; and that the seller shall relinquish and be relieved from, and the purchaser assume, all future benefits and liabilities in respect of the shares." And Walker v. Bartlett (supra) is cited by the court, "as a direct authority that at law the defendants, as purchasers of the shares, would be liable to indemnify the plaintiff against the call in question." The judgment in the case last cited (Grissell v. Bristowe) was reversed in the Exchequer Chamber (Law Rep., 4 C.P., 36), but not upon the point for which we have here relied upon it. For the appellate court say, that the plaintiff is entitled to be indemnified, in respect to the payment made by him of a call made after the transfer of the shares, is undoubted.
In Allen v. Graves (5 Law Rep. [Q.B.], 478), decided in 1870) the defendant, the vendee of stock from the plaintiff, and holding a blank transfer thereof by the plaintiff, the transfer never having been registered, was held liable to pay to the plaintiff the amount of a call made upon him as apparent stockholder, and paid by him in behalf of the company, to raise moneys with which to extinguish its indebtedness. There was in that case no intimation of such a provision in the instrument of transfer. The court do not state the principle upon which the defendant is adjudged liable. It seems to be taken for granted that he was liable, if it was established that he was the real vendee of the stock. And see Torrington v. Lowe (Law Rep., 4 Com. Pl., 26), where the existence of the liability is recognized. *Page 214 
The cases in England, in which the vendee has in such case been held liable in equity, are more numerous. Besides those cited by the appellant, see Coles v. Bristowe (Law Rep., 6 Eq., 149);Hawkins v. Maltby (id., 505). As is said by CROMPTON, J., inWalker v. Bartlett (supra): "I confess I do not see why there should be a different rule at law and in equity."
This court has held, that a vendor of shares of stock by an executory contract becomes, while it is unperformed, a trusteesub modo for the vendee, and that the dividends received were held by him as trustee for his vendee, and that his vendee was entitled to new shares offered to the holders of the old. (Currie v. White, 45 N.Y., 822.) And as a counter proposition, the same case holds that the vendor was not bound to advance his own money, to save for his vendee the new shares, which were to be awarded only upon a further payment by the holders of the old.
This is upon the principle that the duty to bear burdens is correlative to the right to take benefits.
And it is from the existence of that duty, that the law will imply the undertaking, upon the part of the vendee, to indemnify the vendor against future liabilities.
The judgment of the General Term and order for a new trial should be reversed, and that of the referee affirmed, with costs to the appellant.
All concur; ALLEN, J., not sitting.
Order reversed, and judgment accordingly. *Page 215