opinion of this court, their illegality is clear. As to the second, there is involved the question as to the nature and character of the structure, and whether or not it falls fairly within the definition of a "stoop." That question was not presented by the complaint as originally framed, and should not be passed upon until the defendant has had full opportunity to meet it upon proper pleadings.

The judgment will therefore be so modified as to confine its operation to the structures outside the stoop line originally complained of, and, as modified, affirmed, without costs to either party, thus leaving it open to the plaintiff, if so advised, to attack upon a proper complaint the legality of the portico and columns. The order allowing the complaint to be amended nunc pro tunc, and the order denying defendant's motion for leave to answer said amended complaint, must be reversed. All concur.

---

## COIN NOVELTY CO. v. LINDENBORN.

(Supreme Court, Appellate Division, First Department.   November 8, 1907.)

DISCOVERY—EXAMINATION BEFORE TRIAL—PRODUCTION OF BOOKS AND PAPERS.

An order for the examination of an individual defendant before trial cannot properly require him to produce books and papers for inspection.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, § 89.]

Appeal from Special Term.

Action by the Coin Novelty Company against Solomon Lindenborn. From an order denying a motion to vacate an order for the examination of defendant before trial, and for the production of certain books and papers for inspection, defendant appeals. Modified and affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, SCOTT, and LAMBERT, JJ.

Maxwell Davidson, for appellant.
Nathaniel A. Elsberg, for respondent.

PER CURIAM. The order appealed from must be so modified as to strike out of the order for defendant's examination so much as directs him to produce for inspection certain books and papers. Gee v. Pendas, 87 App. Div. 157, 84 N. Y. Supp. 32; Matter of Sands, 98 App. Div. 148, 90 N. Y. Supp. 749.

As so modified, the order will be affirmed, without costs.

---

## COMMERCIAL NAT. BANK OF CHICAGO v. SLOMAN et al.

(Supreme Court, Appellate Division, First Department.   November 8, 1907.)

1. SHIPPING—AUTHORITY OF MASTER—PORT AND OUTFITTING CHARGES.

The master of a German vessel, consigned to ship brokers at New Orleans for cargo, had authority, both under the New York and German law, to incur obligations for necessary outfitting expenses and port charges of the vessel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 258, 259.]

**2. SAME—DELEGATION OF AUTHORITY.**

The master of a vessel, as agent of the owners, while not entitled to delegate all his authority, may request the ship's brokers to contract as the master's agent for the outfitting of the vessel.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 258, 259.]

**3. SAME—SHIP'S BROKERS—AUTHORITY.**

Where a foreign vessel was consigned to ship's brokers at New Orleans for cargo, the brokers had implied authority from the owners to purchase necessary supplies to prepare the vessel for sailing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, §§ 320–324.]

**4. MONEY RECEIVED—ADVANCEMENT ON INVALID OBLIGATION — MISTAKE — QUASI CONTRACT.**

Ship's brokers, under express or implied authority from the owners, having contracted obligations for the necessities of the vessel which were required to be paid or assumed by some responsible person, before sailing procured the master to draw a draft on the owners therefor, pledging the vessel and her freight as security. Plaintiff discounted the draft under the mistaken belief that it was a valid obligation; defendants having subsequently established the master's want of authority to issue it. *Held*, that plaintiff, having paid its money under mistake, and the money having been applied to the owner's benefit under color of authority, plaintiff was entitled to recover it from the owners in an action for money had and received.

**5. SAME—PERSONS LIABLE.**

Plaintiffs were not compelled to seek restitution from the ship's brokers alone, but were entitled to follow the money and recover it from the defendants whose debts it paid.

**6. SAME—MONEY PAID—NATURE OF ACTION—PRIVITY OF CONTRACT.**

An action for money had and received, or for money paid, is founded on equitable principles; no privity of contract between the parties being required, except that resulting from circumstances showing an equitable obligation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Money Received, §§ 7–20; vol. 35, Money Paid, §§ 1–7.]

**7. SAME—VESSELS—NON-LIEN OBLIGATIONS—ADVANCEMENTS.**

Where plaintiff discounted the draft of the master of a vessel, which he had no authority to draw, to obtain money to pay various obligations of the vessel, including the claim of the vessel's brokers for commissions and services, none of which items were required to be paid in order to permit the vessel to leave port, the brokers having no lien on the vessel therefor, plaintiff could not recover such advances against the owners in an action for money had and received.

Appeal from Trial Term, New York County.

Action by the Commercial National Bank of Chicago against Carl B. Sloman and another. From a judgment for plaintiff, and from an order denying defendants' motion for a new trial (102 N. Y. Supp. 931), they appeal. Modified and affirmed.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Everett Masten, for appellants.
A. Henry Mosle, for respondent.

HOUGHTON, J. The defendants consigned for cargo from Hamburg, Germany, to ship brokers at New Orleans, a vessel owned by

them. Upon arriving at that port, upon authority of the master, certain outfittings and port charges, including inland freight charges upon the cargo, were incurred in behalf of the vessel through the ship brokers to whom it was consigned. Upon the vessel being loaded and ready for sailing, the items of these charges were submitted to the master, who marked them correct, and to provide for their payment he drew to his own order and indorsed in blank a draft or note for the amount, payable five days after arrival of the vessel at Antwerp, Belgium, signing it in his own name as master. In the body of this instrument it was stated that it was given for necessary disbursements owed by the vessel, and the vessel and freight were pledged for its payment. This instrument was delivered by the master to the brokers, who, through an agent, obtained the money from plaintiff to pay, and which they used for paying, the obligations which had been so incurred. Upon this draft being presented to the defendants for payment, they refused to honor it and repudiated the authority of the master to give it. Action was brought thereon against defendants in Belgium, and they successfully defended on the ground that by the German law the master of a vessel without express authority could not so bind his principal. Thereupon this action was instituted for money had and received and paid for the use and benefit of defendants, and has resulted in a judgment against them, from which they appeal.

We think this form of action lies against the defendants. Concededly the master had authority to incur obligations for the necessary port charges of the vessel and its outfitting for the voyage. This is so, not only by our law, but, as appears in the case, by the German law. The obligations which were incurred were necessary to the vessel, and it could not have sailed from the port without their being paid or assumed by some responsible person. If the master had personally incurred the obligations, and the plaintiff, at his request, had furnished the money to pay them, the liability of the defendants for reimbursement could hardly be questioned. While the master of the vessel, as agent for the defendants, could not delegate all of his authority, yet he could request, as he manifestly did, that the ship brokers bargain for the outfitting of the vessel and incur obligations in his behalf as agent therefor. The obligations incurred for the outfitting of the vessel were thus incurred by the master himself, notwithstanding the fact that he was aided in obtaining delivery by the pledging of the credit of the ship brokers, who bargained, however, in behalf of the vessel and its master, as appears from the evidence. Whatever was done, therefore, with respect to preparing the vessel for sailing was, in effect, done through the master.

If it is necessary to go further, it can well be said that the ship brokers, being consignees of the vessel, for the purpose of furnishing cargo for it, had implied authority from the defendants to do what was necessary to prepare the vessel for sailing, and hence that they were agents of the defendants in purchasing the necessary supplies for that purpose. In either aspect, therefore, the obligations that were incurred for the necessities of the vessel were incurred by the agents of defendants under express or implied authority. For the purposes of obtaining money to meet these obligations, and as an inducement for

its advancement, and knowing that the charges remained unpaid, and that his vessel could not leave port until payment had been arranged for, the master of the vessel issued his draft and delivered it to the ship brokers. The plaintiffs, believing that it was binding upon the owners of the vessel, cashed it, delivering the money to the ship brokers who satisfied the obligations.

The result of the transaction was that plaintiff furnished the money to pay defendants' debts contracted by their vessel. That plaintiff was induced so to do by a false token does not deprive it of all remedy. The defendants have had the benefit of the supplies furnished to their vessel, but have repudiated the authority of the agent to give an obligation to pay for them. They cannot retain the fruit of an unauthorized act and deny responsibility. While in form the transaction of plaintiff was the discounting of the draft, it transpired that they were mistaken in supposing that they were discounting a valid obligation. The defendants have succeeded in establishing that it was no draft at all. The plaintiff, therefore, paid its money under a mistake, and, it having gone to the benefit of defendants under color of authority, they are responsible for its return. Hathaway v. County of Delaware, 185 N. Y. 368, 78 N. E. 153, 113 Am. St. Rep. 909.

The plaintiff was not compelled to seek restitution of the money which it advanced from the ship brokers alone. It could follow it and recover it from the defendants, whose debts it paid. An action for money had and received, or paid out for the benefit of another, is founded upon equitable principles. No privity of contract between the parties is required, except that which results from circumstances showing an equitable obligation. Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606.

At the time plaintiff advanced the money various obligations of the vessel, amounting to $205.43, had been paid by the ship brokers. They also had a claim for commissions and services amounting to $704.71. Payment of these two items were not necessary to permit the vessel to leave port, for the brokers had no lien upon the vessel for them. The Larch, Fed. Cas. No. 8,085; The Joseph Cunard, Fed. Cas. No. 7,535.

These items, amounting to $910.14, should be deducted from the recovery, and, as so modified, the judgment and order should be affirmed, without costs of this appeal. All concur.