Joseph A. Broderick, as Superintendent of Banks of the State of New York, Plaintiff, *v.* Max Aaron et al., Defendants; James K. Rice, Jr., et al., Copartners under the Firm Name of J. K. Rice, Jr., & Co., Appellants, and William A. Greer et al., Copartners under the Firm Name of Greer, Crane & Webb, Respondents.

(Argued March 15, 1934; decided May 22, 1934.)

*William D. Whitney, Samuel B. Stewart, Jr.,* and *William F. Sullivan* for appellants. The intermediate owner has none of the benefits of the stock and may not properly be subjected to the burdens. (*Richards* v. *Robin,* 175 App. Div. 296; 225 N. Y. 719; *Matter of Grifenhagen* v. *Ordway,* 218 N. Y. 451; *Johnson* v. *Underhill,* 52 N. Y. 203; *Broderick* v. *Adamson,* 148 Misc. Rep. 353; *De Remer* v. *Brown,* 165 N. Y. 410; *Kelly A. B. Co.* v. *Barber A. P. Co.,* 211 N. Y. 68; *Brinkley* v. *Hambleton,* 67 Md. 169; *Rogers* v. *Toland,* 43 Penn. Super. Ct. 248; *Huegle* v. *Bean,* 43 Penn. Super. Ct. 352; *Le Sassier* v. *Kennedy,* 36 La. Ann. 539; 123 U. S. 521.)

*Leo J. Bondy, J. Norman Lewis* and *Arthur M. Sommerfield* for Guy W. Levy et al., individually and as copartners under the firm name of Levy Bros., defendants. The liability to indemnify against calls or assessments arises out of the ownership of the stock and not out of the contract to purchase the same. (*Johnson* v. *Underhill,* 52 N. Y. 203; *Currie* v. *White,* 45 N. Y. 822; *James* v. *May,* [L. R.] 6 H. L. 328; *Castellan* v. *Hobson,* L. R. [10 Eq.] 47; *Locke* v. *Farmers Loan & Trust Co.,* 140 N. Y. 135; *Sigua Iron Co.* v. *Brown,* 171 N. Y. 488; *Humble* v. *Langston,* 7 M. & W. 517; *Richards* v. *Robin,*

175 App. Div. 296; 225 N. Y. 719; *Matter of Griefenhagen,* v. *Ordway,* 218 N. Y. 451.)

*Robert E. Samuels* and *Sidney A. Wolff* for H. E. Peterson & Co., *amici curiæ.* A record stockholder, seeking reimbursement for an assessment levied with respect to stock which he had sold prior to the closing of the bank, has no claim against his vendee who in turn has resold the stock prior to such closing. (*Richards* v. *Robin,* 175 App. Div. 296; 225 N. Y. 719; *Rogers* v. *Toland,* 43 Penn. Super. Ct. 248; *Brinkly* v. *Hambleton,* 67 Md. 169; *Matter of Grifenhagen* v. *Ordway,* 218 N. Y. 451; *Madfes* v. *Beverly Development Corp.,* 251 N. Y. 12.)

*Dudley F. Sicher, Maxwell Davidson* and *George Schreiber* for Benjamin, Hill & Co., *amici curiæ.* The record stockholder is entitled to reimbursement only from one who is the actual or equitable owner at the time of the incidence of the assessment, whether or not such then owner be the record stockholder's immediate vendee; and the liability is not contractual, but is one of trust. (*Richards* v. *Robin,* 175 App. Div. 296; *Johnson* v. *Underhill,* 52 N. Y. 203; *Rogers* v. *Toland,* 43 Penn. Super. Ct. 248; *Huegle* v. *Bean,* 43 Penn. Super. Ct. 352; *Brinkley* v. *Hambleton,* 67 Md. 169; *Le Sassier* v. *Kennedy,* 36 La. Ann. 539; 123 U. S. 521; *Broderick* v. *Adamson,* 148 Misc. Rep. 353; *Genet* v. *D. & H. C. Co.,* 136 N. Y. 593; *Miller* v. *Schloss,* 218 N. Y. 400.)

*A. Hayne de Yampert, Roger M. Blough* and *Winslow M. Lovejoy* for White & Case, *amici curiæ.* Either the registered holder or equitable owner may compel reimbursement for or indemnification against payment of an assessment from the owner on the date the assessment became payable unless such owner purchased the stock after notice of assessment and ex-assessment or is insolvent, in either of which events such recovery may be had against said owner's vendor or any fraudulent transferor. (*Richards* v. *Robin,* 175 App. Div. 296; 225 N. Y. 719;

*Early* v. *Richardson*, 280 U. S. 496; *Johnson* v. *Underhill*, 52 N. Y. 203; *Broderick* v. *Adamson*, 148 Misc. Rep. 353; *Le Sassier* v. *Kennedy*, 36 La. Ann. 539; *Rogers* v. *Toland*, 43 Penn. Super. Ct. 248; *Brinkley* v. *Hambleton*, 67 Md. 169; *Gaffney* v. *People's Trust Co.*, 191 App. Div. 697; 231 N. Y. 577; *Matter of Grifenhagen* v. *Ordway*, 218 N. Y. 451; *Matter of Robinson* v. *Hayes*, 207 App. Div. 718; *Genet* v. *D. & H. C. Co.*, 136 N. Y. 593; *Miller* v. *Schloss*, 218 N. Y. 400.)

*Norman S. Goetz, J. Alvin Van Bergh* and *David Katz* for Cowen & Co., *amici curiæ.*

*Carroll G. Walter* and *James Lee Kauffman* for respondents. A purchaser of stock impliedly agrees to indemnify his vendor against liability for any assessment to which his vendor may be subjected by reason of the purchaser's failure to have the stock transferred upon the books of the corporation; and the purchaser cannot free himself of that obligation by making a resale of the stock to a third party. (*Johnson* v. *Underhill*, 52 N. Y. 203; *Burnett* v. *Lynch*, 5 Barn. & Cres. 589; *Walker* v. *Bartlett*, 18 C. B. 845; *Spencer* v. *Ashworth, Partington & Co.*, [1925] 1 K. B. 589.)

*Arthur Ofner, Warren C. Fielding, Isadore H. Cohen, Harold N. Cohen* and *Carl J. Austrian* for Joseph A. Broderick, as Superintendent of Banks, *amicus curiæ.* The transfer of the stock by appellants does not relieve them from the obligation to indemnify or exonerate the respondents. (*Johnston* v. *Laflin*, 103 U. S. 800; *Maxted* v. *Paine*, [L. R.] 6 Ex. 132; *Alexander* v. *Caro*, [L. R.] 22 So. Aust. 134; *Spencer* v. *Ashworth, Partington & Co.*, [1925] 1 K. B. 589; *Levy* v. *Dunn*, 160 N. Y. 504; *Currie* v. *White*, 45 N. Y. 822; *Johnson* v. *Underhill*, 52 N. Y. 203; *Thompson* v. *Daunt*, 10 L. R. New South Wales, 132; *Hamilton* v. *Hull*, 19 L. R. New Zealand, 49; *Kellock* v. *Enthoven*, [L. R.] 8 Q. B. 458; [L. R.] 9 Q. B. 241; *Boultbee* v. *Gzowski*, 29 Can. Sup. Ct. 54.)

LEHMAN, J. In an action brought by the Superintendent of Banks to enforce the statutory liability of stockholders of the Bank of United States (Banking Law [Cons. Laws, ch. 2], §§ 80 and 120) the members of the firm of Greer, Crane & Webb are named as defendants. That firm appears by the books of the bank to be holders of thirty shares of the stock of the bank. The defendants, so named, had sold the stock to the firm of J. K. Rice, Jr., & Co. before the closing of the bank, and they have impleaded the members of that firm, on the ground that the buyers will be liable to them for the claim made against the stockholders of record. (Civ. Prac. Act, § 193, subd. 2.)

The firm of J. K. Rice, Jr., & Co., are dealers in securities. They agreed to buy the thirty shares of stock on December 10, 1930, at the price of 11¾, and a fraction of a minute thereafter they agreed to sell the same stock to the firm of Levy Bros. at the price of 11⅞. The following morning the stock was delivered to J. K. Rice, Jr., & Co. against a payment of $352.50 and the same certificates were then delivered by them to Levy Bros. Upon these undisputed facts J. K. Rice, Jr., & Co., have moved for summary judgment dismissing the complaint against them. An appeal has been taken to this court from the order of the Appellate Division affirming an order of Special Term denying the motion.

The Appellate Division in its order allowing the appeal has certified the following question: " Where a person appears by the books of a domestic bank to be a stockholder of record, but such stockholder of record has sold his shares prior to the closing of such bank by the Superintendent of Banks, and the purchaser thereof has resold such shares to a third party prior to such closing, is such purchaser from the stockholder of record liable to such stockholder of record for the amount of any assessment for which such stockholder of record may be held liable in an action by the Superintendent of Banks to recover

a statutory assessment under sections 80 and 120 of the Banking Law? "

The statute imposes liability for the debts of a bank upon " 1. Such persons as appear by the books of the bank to be stockholders," and " 2. Every owner of stock, legal or equitable, although the same may be on such books in the name of another person." (Banking Law, § 120.) The statutory liability of Greer, Crane & Webb as stockholders of record was not terminated by the transfer of the stock certificates to J. K. Rice, Jr., & Co., but J. K. Rice, Jr., & Co. did by such transfer become the owners, legal and equitable, of the bank stock though the stock remained on the books of the bank in the name of the original holders, and as long as they remained the actual owners, they shared the liability of the holder of record of the same stock. Their liability was coterminous with their ownership of the stock. It began when they became the owners, it ended when they transferred their ownership to another.

Ownership of stock carries with it the enjoyment of any rights or privileges attached to the stock. True, statute or charter may provide that until the stock is transferred on the books of the corporation, only the holder of the stock as shown on the books of the corporation will be recognized by the corporation as owner. (Cf. Pers. Prop. Law, Cons. Laws, ch. 41, § 164.) Nevertheless, as between record holder and a purchaser from him, the seller becomes a trustee for the purchaser and must account for benefits received. (*Currie* v. *White,* 45 N. Y. 822.) Stock ownership may carry with it charges and duties as well as privileges and benefits, and again one who accepts the benefit may find himself charged with a duty. It has been said that the " very essence of a contract of sale and purchase, in the case of shares is, * * * that one party shall divest himself of, and the other acquire, in the name of himself, * * * the ownership of the shares; * * * and that the seller

shall relinquish and be relieved from and the purchaser assume all future benefits and liabilities in respect of the shares." (*Grissell* v. *Bristowe*, L. R., 3 C. P. 112, quoted in *Johnson* v. *Underhill*, 52 N. Y. 203.)

This court decided there that the actual owner of stock through purchase is under a duty to indemnify the seller against future liabilities arising from record ownership. " This is upon the principle that the duty to bear burdens is correlative to the right to take benefits. And it is from the existence of that duty, that the law will imply the undertaking, upon the part of the vendee, to indemnify the vendor against future liabilities " (p. 214).

The " right to take benefits " is derived from ownership and ceases with transfer of such ownership. The question now arises whether the " duty to bear burdens " continues thereafter. What was said and decided in *Johnson* v. *Underhill* (*supra*) does not answer that question. There the purchaser had not transferred the stock he had bought. It is true that the court formulates the obligation of a purchaser to indemnify the seller without limitation, yet limitation may perhaps be implied from the statement that duty to bear burden and right to benefit are " correlative." The obligation arises from an implied contract. Is that contract implied in fact or in law, and what are its exact terms?

If the contract is implied in fact and is based upon a finding of actual intention, then it would seem to follow that slight difference in the fact might produce infinite variations in result. Doubtless in almost every case the inference may fairly be drawn that the seller of stock does not intend after the sale to bear the burden of any duty which might be charged against the holder of record of the stock. If the seller sought complete release from any obligation imposed upon such holder, he might insist upon a transfer of the stock on the books of the corporation before he parted with ownership. Failure to take such

precaution may be due to obliviousness or to anticipation that the actual owner of the stock would meet any calls that might be made upon the stock; but ordinarily it can hardly be assumed that the parties contemplated or intended that the buyer would " register a transfer of the shares, and with a further undertaking, that the defendants [buyer] would indemnify the plaintiff [seller] against calls which the plaintiff [seller] might be called upon to pay, if, and so long as, the transfer was not registered." From the peculiar circumstances in *Grissell* v. *Bristowe* (*supra*), the Court of Common Pleas did find such a contract implied in fact, but no such circumstances are shown here, and the question actually decided in that case was entirely different. The citation of that case in our decision in *Johnson* v. *Underhill* (*supra*) may hardly be considered as an indication that the same contract would be implied in entirely different circumstances. Indeed, on the same case this court also cited the case of *Walker* v. *Bartlett* (86 Eng. C. L. Rep. 844) as holding that " there was an implied contract upon the part of the defendant to indemnify the vendor against calls made upon the shares, *while they remained the property of the vendee*." (p. 212.) (Italics are ours.) The decision in *Johnson* v. *Underhill* may not be regarded as authority for any broader rule.

In truth it would be difficult to infer from an ordinary sale and delivery of certificates of stock an intention that the buyer should transfer the stock upon the books of the corporation. It is common knowledge that transfers of stock are often not registered upon the books of the corporation and sales are made in the light of such knowledge. That the parties intended a transfer of both benefits and burdens may be true, and it may also be true that upon equitable principles the law will imply from acceptance of benefits a *quasi* contractual obligation to indemnify against burdens, even though actual intention to give such indemnity is absent. Any impli-

cation of fact, however, that there was an intention that the buyer should indemnify the seller against charges even after the seller had in turn parted with the stock and the derivative right to benefits from the stock, would be without foundation.

In a number of decisions, courts of high authority in England have, nevertheless, decided that the law will imply an obligation that the buyer shall indemnify the seller against future charges, even though the buyer has in turn transferred the stock. In *Spencer* v. *Ashworth, Partington & Co.* ([1925] 1 K. B. 589) the English Court of Appeal so held. In some earlier cases the rule had been limited, but the trend of decisions in the English courts had been toward a broad obligation of indemnity, and in *Spencer* v. *Ashworth, Partington & Co.* the broad rule was expressly adopted. Indeed, in that case the parties were stock brokers and had dealt with each other only as stock brokers. Nevertheless, the broker for the buyer was held liable to the broker for the seller, who in turn had been held by the principal.

To some degree, at least, the formulation of the exact obligation imposed by law upon the buyer must depend upon the statutes which impose possible burdens upon holders of stock, and upon the customs and practices in regard to transfer of stock upon the books of corporations by those who buy and sell stock. Then, too, convenience and policy may have some influence. Differences in statutes and customs might lead the courts of this jurisdiction and England to reach different results. This court has decided that a broker who purchases stock at an auction sale is under no obligation to indemnify the seller for charges imposed after the broker delivered the stock to his undisclosed principal. (*Richards* v. *Robin*, 175 App. Div. 296; affd., 225 N. Y. 719.) We can find no valid distinctions between purchases by brokers on the Stock Exchange and purchases by brokers at auction sales; nor can we see any valid distinction between the

contractual obligations of a broker for an undisclosed principal and the obligations of a buyer who is not a broker. Our decision in *Richards* v. *Robin (supra)* must, therefore, be regarded as at variance with the broader English rule as formulated in *Spencer* v. *Ashworth, Partington & Co. (supra)*.

No cases have been cited to us from any American jurisdiction where the obligation to indemnify a seller of stock has been extended beyond the time when the *quasi* trust relation between seller and buyer ceased. (Cf. *Brinkley* v. *Hambleton & Co.*, 67 Md. 169; *Rogers* v. *Toland*, 43 Penn. Super. Ct. 248.) We are told that public policy and convenience should lead to the adoption of the broader English rule. Then it is said the seller could implead his buyer who in turn could implead a buyer to whom he in turn had sold the stock, and the ultimate liability would rest on the last solvent buyer. Thus, too, the Superintendent of Banks could learn the name of the actual owner of the stock and enforce the statutory liability imposed upon the actual owner. On the other hand, we are told that public policy and convenience is best served by the narrower rule, for otherwise the free transfer of bank stock would be unduly hampered. We cannot adopt the broader rule of the English courts, even if we were otherwise disposed to do so, without overruling our decision in *Richards* v. *Robin*, after buyers and sellers may have guided their conduct in accordance with that decision.

There is no duty upon a buyer to register a transfer of stock upon the corporate books, and no obligation arises upon equitable grounds for failure to make such a transfer. No implication in fact of an agreement by the buyer to indemnify the seller from all future charges ordinarily arises from the sale. The obligation of the buyer to indemnify the seller is implied by law. It rests not on actual agreement, but on equitable principles. Seller and buyer occupy a *quasi* trust relationship as long as the

seller remains the holder of record and the buyer remains the actual owner of the stock. Then the law implies correlative obligations binding on each. When the buyer transfers the stock to another, then the new owner becomes entitled to the benefits of the stock. There is no privity of contract between the record holder and the new owner. The record holder may not even know that the buyer has transferred the stock to another. None the less the law makes the holder of the record title to stock a *quasi* trustee for the actual owner, and the law implies an obligation on the part of the record holder to account for the benefits received, and an obligation on the part of the actual owner to indemnify the record holder against liabilities. Here certainly the correlative obligations are both limited to the period when the relationship exists. In so far as the law implies correlative obligations solely from the *quasi* trust relationship, they depend upon privity of estate and cease when that privity terminates. That is true alike where the *cestui* is the original buyer and where the *cestui* is a subsequent assignee.

Thus the wider obligation of a buyer to indemnify the seller against all liabilities until the transfer of stock has been registered which English courts have held is implied in law must rest either upon an inference of actual intention of the parties or upon considerations which require the buyer in good conscience to protect the seller either by transfer of the stock or by indemnification in case of failure to make such transfer. Under English custom there may be a duty on the part of a broker authorized to sell stock or on the part of a buyer to register a transfer. Then there is basis for the implication of an obligation to indemnify the record holder of the stock which survives until the duty to register the transfer has been performed. In this jurisdiction there is no such duty resting upon a buyer, and it is difficult then to find any sound basis for the implication of an obligation by the buyer to indemnify the seller which continues after the buyer has terminated

the *quasi* trust relationship between himself and the seller.

The orders should be reversed and the motion for summary judgment granted, with costs in all courts. The question certified should be answered in the negative.

POUND, Ch. J., CRANE, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Orders reversed, etc.