FREDERICK BROWN, Appellant, *v.* LOUIS N. ROSENBAUM, Respondent.*

First Department, June 18, 1941.

*Alfred A. Cook* of counsel [*Kenneth E. Walser* with him on the brief; *Spence, Windels, Walser, Hotchkiss & Angell*, attorneys], for the appellant.

*Charles H. Tuttle* of counsel [*Breed, Abbott & Morgan*, attorneys], for the respondent.

TOWNLEY, J. This action is brought to recover the amount of an assessment paid by plaintiff's assignor, George Blumenthal, on stock of the Harriman National Bank and Trust Company (hereinafter called the Bank) held by him within sixty days of the closing of the bank.

Defendant Rosenbaum acquired eighty-six shares of the stock previously held by Blumenthal on March 6 and March 11, 1933. Both of these dates occurred during the period covered by the national bank holiday created by the proclamations of the Governor of the State of New York and the President of the United States. Until the declaration of the holiday, the Bank had done a general banking business without restrictions and had met its obligations fully. During the period of the holiday, the Bank continued to function to the extent permitted under the regulations of the Treasury Department and paid out against its funds on deposit for payrolls and other emergencies of its depositors approximately half a million dollars. The holiday ended on March thirteenth. Although other banks were permitted to reopen, this Bank was denied such permission and a conservator was appointed. Concededly, the Bank, both at the beginning and the end of the holiday, was insolvent. Under the Federal statute, an assessment was made against the stockholders of the Bank. The statute holds

liable any person who has been a stockholder within sixty days " next before the date of the failure of such association to meet its obligations." Both Blumenthal and the defendant received notice of the assessment. Neither paid and suit was brought against both. Summary judgment was taken against Blumenthal who paid the assessment amounting to some $10,263.28.

This appeal brings up the record in the second trial of this action. On the first trial, judgment was directed in favor of the plaintiff. On that record two defenses were pleaded. The first was that there could be no recovery because Blumenthal was not the record owner and the defendant's sole duty of indemnity was to the record holder. This defense was overruled by the trial justice who stated " defendant's liability is to the person who was compelled to pay what he should have paid."

The second defense was that the Bank failed to meet its obligations within the meaning of the Federal statute at the commencement of the bank holiday on March fourth and that the defendant having purchased his stock subsequent to that date was not liable for this assessment. On this point the trial justice said: " At the time the defendant became the owner of the stock the bank in question, as far as its status was concerned, was in exactly the same position as every other bank in the country. The change came simultaneously with expiration of the bank holiday. * * * At the time of the purchase the corporation was to all intents a banking corporation."

An appeal from that judgment was taken to this court and the judgment was reversed and a new trial ordered (259 App. Div. 304) because " no identified shares of stock were allocated to the defendant's contract of purchase until after the failure of the Harriman National Bank and Trust Company." The opinion directed a new trial to determine whether there had been any allocation within this period. On the retrial the court found as a fact that there was an allocation of the stock to the defendant's contract of purchase and that the stock was actually acquired and delivered during the period of the bank holiday as above noted. The court, however, expressed itself as compelled by the decision in *Broderick* v. *Aaron* (264 N. Y. 368) to deny relief to the plaintiff and the complaint was dismissed.

The Federal statute imposing liability for assessment against a stockholder of national banks reads (U. S. Code, tit. 12, § 64): " The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock.

The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

The exact wording of the statute is important because the respondent on this appeal again asserts the same defenses which were asserted at the prior trial. It is claimed again that the sixty-day period ended on the date when the Bank failed to completely function on account of the bank holiday and that since the defendant's stock was purchased subsequent to that date, no liability for the assessment exists.

It is our view that this contention cannot be sustained. The language of the statute fixes the end of the period as being " THE DATE OF THE FAILURE OF SUCH ASSOCIATION TO MEET ITS OBLIGATIONS." The Bank never failed to meet any of its obligations until the appointment of a conservator on March thirteenth. During the period of the bank holiday, it functioned within the restrictions imposed by the Treasury Department, it met all the obligations which it was permitted to meet and its status was no different from any other national bank which later reopened under Federal license. It should be noted that the standard established by the statute is not insolvency. The test which determines the class liable to assessment is ownership of stock within sixty days before the failure of the Bank to meet its obligations. The two dates may or may not be synonymous. A bank may be insolvent, as this one doubtless was for several months, and yet continue to meet its obligations completely. The language of the proclamations creating the bank holiday negatives the idea that the closing of the banks was caused by their failure to meet their obligations. The reason assigned in the proclamations was the unprecedented withdrawal of money from the banks and subsequent speculation in foreign exchange, as well as hoarding.

The defendant having purchased his stock during the bank holiday became a stockholder before the Bank failed to meet its obligations and is, therefore, subject to assessment. This exact question was passed upon by Judge GODDARD in *Pyne* v. *Jackman* (12 Fed. Supp. 653, 655) where he said in his opinion:

" It does not seem to me that March 4 can be assumed as the date when the bank failed ' to meet its obligations ' as contemplated by section 64 of the statute. It was closed then by a general proclamation closing all banks; not because it had failed to meet its obligations. The fact is that right up to the time the * * * Bank, as well as all other banks, were closed by the President's proclamation, it was meeting its obligations. * * *

" I think it could hardly be suggested that when the banks throughout the country closed on March 4 pursuant to the general proclamations, that there was such failure to meet their obligations as to hold the stockholders of the national banks liable under section 64 on the ground that the banks had failed to meet their respective obligations."

The cases seemingly to the contrary relied on by the respondent are distinguishable as involving rights of creditors, the maturity of which was dependent upon insolvency and not upon the status described in the statute.

Defendant attaches some importance to a circular letter issued by the Comptroller of the Currency fixing the date upon which banks closed under the President's proclamation as the " official date of closing " in cases where the banks did not reopen thereafter. This letter simply fixed a date for the adjustment of the rights of creditors and depositors. It did not and could not fix a date different from that fixed by the statute. The same claim was passed on in *Pyne* v. *Jackmon* (*supra*), the court saying (p. 656): " I do not think that this could or was intended to be a judicial determination of or to effect the legal status of a stockholder under section 64, but was intended as merely the date as of which the rights of the depositors of such a bank were to be adjusted."

Defendant also claims that he is not liable to the plaintiff because there was no privity of contract or estate between them. This claim is equally without merit. The conclusion reached by the trial court that privity of contract or estate is essential to the fixing of liability is based upon the decision of the Court of Appeals in *Broderick* v. *Aaron* (*supra*). That case has no application to the question presented here. In that case a holder of bank stock, who was liable under the New York statute because the stock was registered in his name at the time of the insolvency of the bank, brought an action to recover from his immediate vendee the amount of the assessment which he had been obliged to pay. His immediate vendee had transferred the stock prior to the insolvency, and for that reason, under the New York statute, was not liable for the assessment. The Court of Appeals held that the responsibility growing out of a vendor-vendee relationship ended with the transfer

of the stock by the vendee. The whole controversy turned on the reciprocal responsibility arising in a case where the vendee was no longer directly liable for the assessment.

We have no such situation before us in this case. The liability claimed is not based upon any vendor-vendee relationship. The statute herein involved creates a liability on the part of all stockholders who have transferred their stock within sixty days. Such persons, as the statute reads, " shall be liable * * * as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability."

Liability here is predicated upon the broad equitable principle that a person who has discharged a debt which as between himself and another should have been discharged by the other is entitled to indemnity. It has been uniformly held that the primary obligation for an assessment rests upon the actual owner of the stock at the time the right to the assessment accrues. He who has the benefits of ownership must also bear its burdens. This is particularly true under the terms of the Federal statute because the liability of prior holders of stock is to pay only what the present owner fails to pay, thus clearly indicating that the primary obligation is upon the present owner of the stock and that the obligation of the others made liable by the terms of the statute is only secondary.

This fundamental rule of equitable relief has been uniformly recognized in this and other jurisdictions. The Restatement of the Law of Restitution, section 76, states the principles, as follows: " General Rule. A person who in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other * * *." In *Commercial National Bank* v. *Sloman* (121 App. Div. 874, 877), the court in its opinion said: " An action for money had and received, or paid out for the benefit of another, is founded upon equitable principles. No privity of contract between the parties is required except that which results from circumstances showing an equitable obligation." Similarly, in *Laurent* v. *Anderson* (70 F. [2d] 819), the court said: " To determine liability under section 64, the courts must * * * ascertain who is the real and beneficial holder of the stock. It has long been settled that the real and beneficial holder of bank stock is primarily liable for the double liability." Likewise, in *Ward* v. *Simon* (23 F. Supp. 117), it was stated that " the liability of an assignee * * * arises * * * because he has become a stockholder and when the assignor and assignee are both liable, the primary obligation, as between themselves, rests upon the assignee." The Supreme Court of the United States in *Early*

v. *Richardson* (280 U. S. 496, 498) held that " as between seller and purchaser, the purchaser alone became liable for any assessment thereafter imposed; for, as between them, it would be in disregard of all equitable principles to continue against the seller the burdens of ownership after the purchaser had become entitled to all the benefits including the receipt of dividends."

Judge, now Chief Judge, LEHMAN wrote to the same effect in *Broderick* v. *Aaron* (*supra*) when he said (p. 375): " Upon equitable principles the law will imply from acceptance of benefits a *quasi* contractual obligation to indemnify against burdens, even though actual intention to give such indemnity is absent."

The application of these principles to the case at bar is plain. The defendant being primarily liable for the assessment must reimburse the plaintiff who has paid his debt.

The judgment should be reversed, with costs, and judgment should be directed in favor of the plaintiff for the amount of the assessment paid on the eighty-six shares above referred to, with costs.

MARTIN, P. J., O'MALLEY and GLENNON, JJ., concur; UNTERMYER, J., dissents and votes to affirm.

Judgment reversed, with costs, and judgment directed in favor of the plaintiff for the amount of the assessment paid on the eighty-six shares referred to in the opinion, with costs. Settle order on notice.