HOWARD S. HOIT et al., Copartners under the Firm Name of HOIT, ROSE & TROSTER, Appellants; LETA M. KAHN, Respondent.

(Argued June 6, 1935; decided July 11, 1935.)

*William D. Whitney* and *Samuel B. Stewart, Jr.,* for appellants. Since appellants sold all their shares prior to the closing of the bank, they cannot be held liable as beneficial owners. (*Broderick* v. *Aaron,* 264 N. Y. 368;

*Richards* v. *Robin,* 175 App. Div. 296; 225 N. Y. 719; *Johnson* v. *Underhill,* 52 N. Y. 203; *Currie* v. *White,* 45 N. Y. 822.) If appropriation were necessary to the passage of equitable title, appellants acquired no equitable title to the shares of stock involved until after the closing of the bank, and are, therefore, not liable to reimburse respondent. (*Wills* v. *Investors Bankstocks Corp.,* 257 N. Y. 451; *Proctor & Gamble Co.* v. *Peters, White & Co.,* 233 N. Y. 97.)

*Myron K. Wilson* and *David W. Kahn* for respondent. At the time of the closing of the bank on December 10th, the appellants were the beneficial or equitable owners of the shares. The fact that appellants may have been short of the stock at the close of business on December 10th, does not relieve them from liability to the respondent. (*Broderick* v. *Aaron,* 152 Misc. Rep. 791; *Wills* v. *Investors Bankstocks Corp.,* 257 N. Y. 451; *Goodhue* v. *State St. Trust Co.,* 267 Mass. 28; *Matter of Broomhall, Killough & Co.,* 61 Fed. Rep. [2d] 760; *Matter of Bankers' Capital Corp.,* 51 Fed. Rep. [2d] 737; *Agar* v. *Orda,* 144 Misc. Rep. 149; 239 App. Div. 827; 264 N. Y. 248; *Broderick* v. *Britting,* 147 Misc. Rep. 363.) The sale from the respondent to the appellants was a sale *in presenti* which operated to pass at once the beneficial title to the respondent's shares. (*Beardsley* v. *Beardsley,* 138 U. S. 262; *Erdreich* v. *Zimmermann,* 190 App. Div. 443; *Currie* v. *White,* 45 N. Y. 822; *Sexton* v. *Kessler,* 225 U. S. 90.)

LEHMAN, J. In the morning of December 10, 1930, Leta M. Kahn gave an order to her agent or broker to sell fifty shares of stock owned by her in the Bank of United States. The order was executed about noon. The firm of Hoit, Rose & Troster, who are dealers in bank stock, purchased the fifty shares offered by the broker or agent. In accordance with the usual custom among brokers or dealers in bank stock, the delivery of the certificate of the fifty shares sold on December 10th was made on the following day. In the interval the Superintendent of Banks had taken possession of the bank.

The fifty shares of stock delivered by Leta M. Kahn were registered in her name upon the books of the bank. She is subject to the liability imposed by the Constitution of the State (Art. VIII, § 7) and by the Banking Law (Cons. Laws, ch. 2; §§ 80 and 120) upon stockholders of the bank. She does not contest her liability. She claims, however, that Hoit, Rose & Troster, as purchasers of her stock, are bound to indemnify her against such liability accruing after the sale to them. They have been made parties to the action, and judgment has been entered against them upon Leta M. Kahn's cross-claim.

We have said that " the obligation of the buyer to indemnify the seller is implied by law. It rests not on actual agreement, but on equitable principles. Seller and buyer occupy a quasi-trust relationship as long as the seller remains the holder of record and the buyer remains the actual owner of the stock." (*Broderick* v. *Aaron* [*Rice*], 264 N. Y. 368, 377.) Regardless of whether title to the stock of Leta M. Kahn passed from the seller of the stock prior to delivery of the certificate, or even prior to transfer upon the books of the corporation, the seller by contract of present sale was bound to transfer, and the buyer was bound to accept, fifty shares of stock, together with rights to any benefit accruing upon the stock from the time the contract of sale was made. (*Currie* v. *White*, 45 N. Y. 822.) The contract of sale may not call for immediate delivery of the stock — even appropriation of specific stock to the contract may be postponed, yet the purchaser acquired by a contract of present sale a right to the benefits which may accrue upon the stock bought, and that right is, for convenience, called the " beneficial ownership " of the stock.

The beneficial owner of the stock at the same time becomes subject to an obligation to indemnify the seller upon a liability which may flow from record ownership of the stock; for the " duty to bear burdens is correlative to the right to take benefits." (*Johnson* v. *Underhill*, 52 N. Y.

203, 214.) To obtain the status of a stockholder with consequent benefits from the corporation and with correlative liabilities to the corporation, transfer of the stock upon the books of the corporation may be necessary. None the less the beneficial owner of the stock may require the holder of record of the stock to transfer to him benefits received, and the holder of record of the stock may, after sale of the stock, require the purchaser, so long as he remains beneficial owner, to indemnify him for loss sustained by reason of liabilities incurred as holder of record.

These general rules are well established, and in reliance upon them, Leta M. Kahn has obtained judgment against Hoit, Rose & Troster to whom, through her agent or broker, she sold fifty shares of stock. The purchasers do not challenge these rules. They contend that they in turn sold the stock they bought from Leta M. Kahn and were no longer the beneficial owners of her stock when the Superintendent of Banks took possession of Bank of United States.

In *Broderick* v. *Aaron* (*Rice*) (*supra*) we held that where a purchaser, from a stockholder of record, of shares of stock in Bank of United States, resold the shares before the bank closed, he was not liable to such stockholder of record for the amount of the statutory assessment recovered by the Superintendent of Banks against the stockholder of record. Here the purchasers of the stock attempt to establish the resale by proof that on December 10th, the day before the Bank of United States closed, they bought many blocks of stock in that bank, including the stock of Leta M. Kahn, and that on the same day they made many sales of stock in the same bank, and at the close of business they had sold more shares than they had bought or than they owned; in other words, that they were actually short of the stock. That, on the following day, after the bank was closed, they received delivery of the stock they had bought the previous day,

including the stock bought from Leta M. Kahn. As they received delivery of stock bought the previous day, they delivered the stock received to those to whom they had made sales on the previous day. The fifty shares of stock bought from Leta M. Kahn were then delivered upon a contract for the sale of the same number of shares of stock made by them three hours after they had bought the stock which they delivered.

Thus, though at the time the Bank of United States was closed, the purchasers of the stock from Leta M. Kahn had not transferred to any other person the shares they had bought from her, yet they had, in fact, made contracts of sale of more shares than they had bought or owned. Their claim now is that they had in that manner ceased to be the beneficial owners of any stock in the Bank of United States and were, consequently, not subject to the burdens placed by law upon the stockholders of the bank.

They admit that at the time the bank closed they had not passed title to the stock they had bought to any purchaser, but they urge that they had not received title to the stock they had bought prior to that time. They admit that they had not even appropriated any stock bought prior to that time upon any contract for the sale of similar stock, but they urge that no appropriation of stock upon their contracts to buy had been made by the original seller with their consent. They argue that it follows that prior to the closing of the bank they did not, by their purchase, obtain a beneficial interest in any identified stock, and if by the purchase they acquired the beneficial ownership in unidentified stock, they parted with such beneficial ownership by sale of more unidentified stock than they had bought.

In some respects the factual situation is apparently analogous to that presented in *Broderick* v. *Aaron* (*Rice*) (*supra*). In both cases the contracts of sale and of resale were made on the day before the closing of the bank and delivery was made thereafter. In both cases no

title to identified stock passed either upon the original sale or upon the resale prior to the closing of the bank. There analogy ceases. In the earlier case resale was made a fraction of a minute after the original purchase. It was not disputed that the resale was of the same stock which was bought a moment before, and was made with intention to deliver the same stock which they would obtain under their contract of purchase. True, the intermediate purchasers could not have been compelled to deliver upon the resale the identical shares of stock which were delivered to them. They might have complied with the contract of resale by delivering the same number of shares procured elsewhere. They did not do so, and so far as appears they never intended to do so, and never acquired any other shares for that purpose. Therefore, the assumption that the purchaser of the stock from the stockholder of record resold the same stock as they had bought was not challenged in this court and rested upon a substantial foundation.

Here the situation is different. The purchaser from the stockholder of record dealt in numerous blocks of stock. At no time prior to the closing of the bank was there any identification of contract to buy with subsequent contract to sell. Difference in length of time elapsing between the contracts of purchase and resale may not create an arbitrary distinction; it may, nevertheless, be a logical factor in the determination of whether the contracts of purchase and resale concerned the same stock. In the earlier case there was no dispute as to that. Here it clearly appears that the original purchasers of stock from Leta M. Kahn used her stock in conjunction with other stock they bought on the same day to create a mass of stock out of which they might indiscriminately withdraw stock for delivery upon such contracts of sale as they might choose to make, and they resold no identifiable stock, delivered to them, until they withdrew such stock from the mass and used it for delivery upon a subsequent contract.

Though beneficial rights and obligations are attached to record ownership of identified shares of stock, yet as between the buyer and seller of a stipulated number of shares of corporate stock, beneficial rights attached to the stipulated number of shares may pass, though no particular shares are specified. Thus, when Leta M. Kahn made a present sale of fifty shares of stock, it was immaterial whether she owned exactly fifty shares, or more than that number, or no shares. In any case she was bound to deliver fifty shares of stock, and the right to any dividends or other benefit accruing to the record holder after the date of the contract of sale; and in any case upon such delivery the purchaser received the stock subject to the burdens or liabilities accruing to the record holder of the stock after the sale, until the purchaser resold the stock. To terminate such liability, actual transfer of the beneficial ownership, by resale of the specific stock to which the beneficial ownership attached, is necessary. There rights and obligations incident to beneficial ownership in specific stock are not divested until the beneficial ownership to that particular stock passes from the buyer.

It follows from these general rules that when Hoit, Rose & Troster bought fifty shares of bank stock, they acquired the right to the delivery of that number of shares together with all benefits accruing thereon from the date of this purchase, and they at the same time assumed towards the seller the burden of all obligations accruing upon the same number of shares. Leta M. Kahn, the seller, was the owner of record of fifty shares of stock. She could perform her contract of sale by delivery of those shares, or any other shares, to the purchasers. Regardless of whether she delivered her own stock or other stock to the purchasers, the purchasers were entitled to receive from her the intervening beneficial rights in the stock delivered, and were subject to the correlative burdens upon that stock which otherwise the seller might be compelled to bear. When the purchasers

thereafter made contracts of sale of stock in the same bank, the buyers obtained similar rights from them and became subject to similar obligations. Upon one of these contracts of sale the sellers delivered the stock purchased from Leta M. Kahn. There was no resale of that stock until the time of its delivery. Until that time, Hoit, Rose & Troster remained entitled to receive, from the stockholders of record, benefits accruing upon the stock purchased from her by them, and were under an obligation to indemnify the seller against any liability arising from her record ownership of the stock delivered. They transferred that right and divested themselves of that obligation only when they parted with beneficial ownership to the specific stock they had agreed to buy from her. As between themselves and the purchaser from them, they may have a right to indemnity for loss occasioned by their beneficial ownership of stock which was thereafter appropriated to their contract of sale. That question is not before us. Their obligation to the record owner of the stock from whom they purchased the stock remains in force until they transferred the beneficial ownership in the same stock to another. They could not give that transfer a retroactive effect.

The judgment should be affirmed, with costs.

· CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment affirmed.