Joseph A. Broderick, as Superintendent of Banks of the State of New York, Plaintiff, *v.* Robert Adamson et al., Defendants; Wilfrid Greif, Appellant, and Howard S. Hoit et al., Copartners under the Firm Name of Hoit, Rose & Troster et al., Respondents.

(Argued January 15, 1936; decided March 3, 1936.)

*Hugh S. Williamson* and *Charles A. Howard, Jr.,* for appellant. When the bank closed, respondents owned the beneficial interest in 200 shares of stock standing of record in the name of appellant and accordingly are bound to indemnify him against the assessment levied on said stock. (*Broderick* v. *Alexander* [*Kahn*], 268 N. Y. 306; *Wills* v. *Investors Bankstocks Corp.,* 257 N. Y. 451; *Agar* v. *Orda,* 264 N. Y. 248; *Currie* v. *White,* 45 N. Y. 822; *Johnson* v. *Underhill,* 52 N. Y. 203; *Richards* v. *Robin,* 175 App. Div. 296; 225 N. Y. 719; *Broderick* v. *Aaron* [*Greer*], 264 N. Y. 368.)

*Louis Schneider* and *Kevie Jaffe* for respondents. Title to appellant's stock did not pass to respondents until December 11, 1930. (*Broderick* v. *Aaron,* 152 Misc. Rep. 791; *Cobb* v. *Knapp,* 71 N. Y. 348; *Meyers* v. *Redmond,* 205 N. Y. 478; *Richards* v. *Robin,* 225 N. Y. 719; *Broderick*

v. *Alexander* [*Kornberg*], 268 N. Y. 260.) The respondents resold the stock before December 11, 1930. (*Broderick* v. *Aaron* [*Kahn*], 268 N. Y. 306; *Richardson* v. *Shaw*, 209 U. S. 365; *Caswell* v. *Putman*, 120 N. Y. 153; *Horton* v. *Morgan*, 19 N. Y. 170; *Broderick* v. *Aaron*, 152 Misc. Rep. 791.)

LEHMAN, J. On December 11, 1930, the Bank of United States failed to open, and the Superintendent of Banks took possession of its business and assets. At that time the defendant Wilfrid Greif was the owner of record of 300 shares of the stock of the bank, represented by three certificates. In the action subsequently brought by the Superintendent of Banks to enforce the statutory liability of the stockholders of the bank, judgment was entered against the defendant Greif. He does not upon this appeal challenge the validity of that judgment in favor of the bank. In the answer he interposed in the action he asserted a claim in accordance with the provisions of section 264 of the Civil Practice Act against the members of the firm of Hoit, Rose & Troster, and the appeal relates only to the dismissal of that claim.

The three certificates representing the stock of which the defendant Greif was the record owner had been deposited, prior to December 10, 1930, with a firm of stockbrokers in the name of Blanche Greif, the defendant's wife. On that day the defendant gave an order to the broker for the sale of 300 shares of stock of the Bank of United States for the account of his wife. Pursuant to that order the brokers sold 100 shares to W. C. Orton & Co., and 200 shares to the firm of Hoit, Rose & Troster, dealers in securities, who at that time were trading actively in stock of the Bank of United States. On the following day the brokers delivered one certificate of the stock standing in the name of the defendant to Orton & Company and two certificates for the aggregate of 200 shares to Hoit, Rose & Troster. The defendant Greif now contends that upon the delivery

of the stock to the purchasers, they became obligated to indemnify him against any liability arising from his record ownership of the stock from the time that he sold the stock. The statutory liability attached to record ownership of the stock at the moment when the Superintendent of Banks took possession of the business or assets of the bank. Duty of indemnity can arise only from beneficial ownership of the stock at the same moment. The problem presented is whether at that moment Hoit, Rose & Troster were the beneficial owners of the stock.

The brokers who sold 200 shares of stock acted as agents in the sale. The principal then became obligated to deliver on the following day 200 shares of stock. He was not under any obligation to deliver the specific stock which he then owned. He might, if he chose, deliver other shares which he might acquire in the interval. Thus until delivery the seller did not part with the beneficial interest in any specific shares of stock and the buyer acquired no beneficial interest in any specific shares of stock. None the less, the buyer was entitled to receive from the seller the stipulated number of shares, together with the right to any benefits accruing upon such shares from the time when the contract of purchase and sale was made. (*Currie* v. *White*, 45 N. Y. 822.) By delivery of certificates for the 200 shares of stock standing in the name of the defendant Greif, Hoit, Rose & Troster acquired the right also to any benefit which might have accrued upon those shares in the interval between sale and delivery. They also thereby became subject to the correlative duty of indemnifying the seller against any burden of liability which might have accrued against him as owner of record of the stock during the same interval. In that interval the statutory liability had accrued. Here it is immaterial whether or not specific shares of stock were appropriated to the contract of sale by the seller before that liability accrued. The obligation of indemnity rests upon equitable prin-

ciples. If at the time of the contract of sale, title to specified shares of stock had passed to the buyer, then there could be no doubt that the buyer immediately would have become the beneficial owner of the stock and subject to the burden of liability accruing upon the stock thereafter so long as he remained such beneficial owner of the stock. The same equitable principles apply where the buyer becomes entitled to delivery of a stipulated number of shares, with the benefits attached to such shares. Again benefit and burden are correlative. When delivery of specific stock is made with the benefits of ownership of such stock from the date of contract of sale, the burden of indemnity is as broad as the benefit received and attaches to the same specific stock. Both relate back to the time when the contract of sale was made. (*Broderick* v. *Alexander* [*Kahn*], 268 N. Y. 306.)

At the moment when the bank closed, some person was the record owner of each share of stock in the bank, and he or some other person was entitled to the beneficial ownership of the same share and subject to the obligations which attach to such ownership. Though, at that time, Hoit, Rose & Troster had not acquired beneficial ownership in the specific shares standing in the name of Greif, they had by contract made by brokers upon Greif's orders acquired the right to the delivery of 200 shares of stock of the bank with the beneficial ownership dating back to the contract. When delivery was made of certificates of 200 shares of stock standing in Greif's name, the contract that the beneficial ownership should date back to the time of the sale must be given its intended effect. Thus, as between Greif and Hoit, Rose & Troster, the beneficial ownership in the interval between sale and delivery of the stock relates back to the contract, and the buyer is subject to all the rights and burdens connected with beneficial ownership during that time.

Beneficial ownership, like legal ownership or title, can, from its nature, attach only to specific identifiable stock,

though after delivery and transfer of title to specific stock the beneficial ownership therein may, by earlier contract of sale, be made to relate back to the date of the contract. In the interval between such contract and the delivery of the stock, the buyer may agree to sell or transfer to another the *same* stock which he agreed to buy. Then he divests himself in advance of beneficial ownership in the stock and also of the burden attached to such ownership. (*Broderick* v. *Aaron* [*Rice*], 264 N. Y. 368.) Again, however, it must be remembered that the original buyer does not divest himself of the beneficial ownership in the stock he has agreed to buy unless he has agreed to sell or transfer the *same* stock.

That brings us to the question whether in this case Hoit, Rose & Troster did, before the closing of the bank, agree to sell the same stock which they had agreed to buy and which was thereafter delivered to them upon the contract made by the brokers, upon Greif's orders. That contract was, as we have said, made on December 10th, and delivery was made on December 11th after the bank was closed. The buyers traded actively in bank stock, and it is apparent from the record that all purchases were made for the purpose only of immediate resale. On December 10th they bought or agreed to buy an aggregate of 1,686 shares of stock of the Bank of United States, including 200 shares from the brokers who acted upon Greif's order. On the same day they sold 1,775 shares, and at the close of the day they were " short " 36 shares, *i. e.*, they had agreed to sell more shares than they owned or had agreed to buy. They had made a contract to sell 200 shares shortly after they had purchased 200 shares from Greif's brokers, but they did not then or thereafter appropriate to that contract of sale the specific shares which they expected to receive upon their contract of purchase. Though, doubtless, they intended to deliver, upon their contracts to sell, the stock which would be received by them upon their contracts to buy, yet in accordance with the customs

of their business they intended to appropriate specific stock to specific contracts only when the time for delivery arrived. Thus on the morning of December 11th, when the bank failed to open, there was no person other than Hoit, Rose & Troster who could be identified as the beneficial owner of the stock standing in the name of the defendant Greif.

It is true that when Hoit, Rose & Troster thereafter delivered that stock to a purchaser from them under a contract of sale, the beneficial ownership would as between the parties to the agreement date back to the time when the contract was made and, perhaps, Hoit, Rose & Troster may, because of that contract, be entitled to indemnity from the buyer for all liability attached to beneficial ownership, just as Greif, because of similar contract, can obtain indemnity from Hoit, Rose & Troster. That question is not now before us. Even so an agreement that upon transfer of title to stock the title or beneficial ownership shall relate back to an earlier date, cannot deprive third parties of rights which would otherwise accrue to them. The law imposes upon the beneficial owner of stock an obligation in favor of the record owner. By contract made before such obligation arose, Hoit, Rose & Troster might acquire from the legal owner the beneficial ownership or title to specific stock which related back to an earlier time, and by similar contract they might confer ownership in the same stock to relate back to a time before the obligation arose. They could not, however, by any act of theirs divest themselves of the beneficial ownership in specific stock and its resultant obligation after that obligation became fixed. Some form of appropriation sufficient to identify the stock Hoit, Rose & Troster had agreed to purchase with the stock they had agreed to sell must be made before Hoit, Rose & Troster parted with their beneficial interest in the stock. Beneficial ownership in every share of the stock of the Bank of United States must rest at

any given moment in some person.  Mere appropriation by the owner of stock made after an obligation imposed by law upon the owner in favor of another has accrued, though made pursuant to a contract, cannot change a legal obligation owed to a third party.  So we have decided in *Broderick* v. *Alexander* (*Kahn*) (*supra*) and in *Broderick* v. *Aaron* (*Ungerleider*) (269 N. Y. 661.)

The judgments so far as appealed from should be reversed and judgment directed in favor of the appellant as against the respondents, with costs to appellant in all courts.

CRANE, Ch. J., O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment accordingly.