MAX H. RUBINSTEIN, Plaintiff, *v.* SYLVESTER W. LAWSON and Another, Individually and as Copartners Doing Business under the Firm Name and Style of LAWSON & Co., and Others, Defendants.

Municipal Court of New York, Borough of Manhattan, Fifth District, June 8, 1936.

*William Seligson* [*Leo E. Falkin* of counsel], for the plaintiff.

*Frederick E. King*, for Lawson & Co.

*Kraditor & Sherr* [*Moses B. Sherr* of counsel], for Englander, Birnbaum & Co.

*Philip C. Samuels* and *Max Lazarus*, for M. S. Wien & Co.

LEWIS (DAVID C.), J.   On the 9th day of December, 1930, the plaintiff was a stockholder of record of twenty shares of stock of the Bank of United States, represented by certificate No. 103927. He made a contract of sale of his stock to Englander, Birnbaum & Co.   On the tenth day of December, Englander, Birnbaum & Co. in turn entered into a contract of sale of a number of shares of

stock in the Bank of United States with the defendant Wien. Thereafter and before the eleventh day of December, Wien entered into a similar contract of sale of a number of shares of stock in the Bank of United States with the defendant Lawson. On the 11th day of December, 1930, after the closing of the Bank of United States occurred, Lawson entered into a contract of sale of a number of shares of stock in the Bank of United States with the defendant Wien.

It will be noted that the sale transactions (except that between Lawson, as the seller, and Wien, as the buyer) occurred before the bank was closed.

Following the closing of the bank, the plaintiff, as the stockholder of record, was compelled to pay the statutory assessment to the Superintendent of Banks. Thereafter the plaintiff instituted this action for reimbursement from his immediate purchaser; and each of the successive purchasers pleaded over against the other respective buyer to secure indemnity.

The basis for the claims of one defendant against the other is built on the fact that the original certificate held by the plaintiff was relayed from one to the other in the consummation of the respective sales between them. However, as a matter of fact there was no delivery of any stock made by any seller to any purchaser until after the bank had been closed. This litigation has narrowed itself down to the controversy between the defendant M. S. Wien & Co. and the defendant Lawson.

Recent decisions of the Court of Appeals govern the deliberations of this court. Between the immediate seller and the immediate purchaser of stock, the responsibility for assessments shares a common determinant with the right to dividends. The ruling rests on the equitable principle that where one takes the benefit he should also assume the burden. Benefit and burden are correlative. (*Broderick* v. *Alexander* [*Kahn*], 268 N. Y. 306, at p. 309.)

The time of the sale, not the date of the delivery, marks the juncture when this right and correlative responsibility is to be decided.

The fact that there has been neither the appropriation nor delivery of any specific stock does not legally affect the question. The subsequent delivery of specific stock is given a retroactive effect as of the date of the contract of sale, and in this way the identity (the basis of the right to dividends and the responsibility for assessment) is established.

" The brokers who sold 200 shares of stock acted as agents in the sale. The principal then became obligated to deliver on the following day 200 shares of stock. He was not under any

obligation to deliver the specific stock which he then owned. He might, if he chose, deliver other shares which he might acquire in the interval. Thus until delivery the seller did not part with the beneficial interest in any specific shares of stock and the buyer acquired no beneficial interest in any specific shares of stock. None the less, the buyer was entitled to receive from the seller the stipulated number of shares, together with the right to any benefits accruing upon such shares from the time when the contract of purchase and sale was made. (*Currie* v. *White*, 45 N. Y. 822.) By delivery of certificates for the 200 shares of stock standing in the name of the defendant Greif, Hoit, Rose and Troster acquired the right also to any benefit which might have accrued upon those shares in the interval between sale and delivery. They also thereby became subject to the correlative duty of indemnifying the seller against any burden of liability which might have accrued against him as owner of record of the stock during the same interval. In that interval the statutory liability had accrued. Here it is immaterial whether or not specific shares of stock were appropriated to the contract of sale by the seller before that liability accrued. The obligation of indemnity rests upon equitable principles. If at the time of the contract of sale, title to specified shares of stock had passed to the buyer, then there could be no doubt that the buyer immediately would have become the beneficial owner of the stock and subject to the burden of liability accruing upon the stock thereafter so long as he remained such beneficial owner of the stock. The same equitable principles apply where the buyer becomes entitled to delivery of a stipulated number of shares, with the benefits attached to such shares. Again benefit and burden are correlative. When delivery of specific stock is made with the benefits of ownership of such stock from the date of contract of sale, the burden of indemnity is as broad as the benefit received and attaches to the same specific stock. Both relate back to the time when the contract of sale was made." (*Broderick* v. *Adamson* [*Greif*], 270 N. Y. 260, at pp. 263, 264.) (See, also, *Broderick* v. *Alexander* [*Kahn*], *supra*, 309, 313; *Broderick* v. *Aaron*, 264 N. Y. 368, at p. 377.)

However, the same principles controlling sales made prior to the closing of the bank have no application to transactions which only originated after the Bank of United States closed. The law does not consider the selling and buying of shares in a closed bank as an actual sale of bank shares. The stock in a closed bank does not retain all its original qualities or attributes.

So when Lawson & Co. after the 11th day of December, 1930, sold alleged shares of stock in the Bank of United States to Wien

& Co., the deal was a separate and distinct transaction, commenced and concluded entirely after the closing of the bank, and stands on an entirely different footing than the sales contracts made before December 11, 1930. (*Broderick* v. *Aaron* [*Kornberg*], 268 N. Y. 260.)

The defendant insists that this case comes within the reservation expressed in the opinion of the Court of Appeals.

" On the date of the closing of the bank, the creditors had a right to look to the personal responsibility of those who were then its ' stockholders.' Those stockholders could thereafter transfer any rights as stockholders which they still possessed. Perhaps the persons who thus acquired these rights might as between themselves and their assignors become subject to some correlative burdens, which we do not now attempt to define." (*Broderick* v. *Aaron* [*Kornberg*], *supra*, at p. 267.)

Likewise the defendant assumes the case before us falls within an exception cautiously made by the Court of Appeals in its opinion: " As between themselves and the purchaser from them, they may have a right to indemnity for loss occasioned by their beneficial ownership of stock which was thereafter appropriated to their contract of sale. That question is not before us." (See *Broderick* v. *Alexander* [*Kahn*], 268 N. Y. 306, at p. 314.)

However, the instant case simply presents an ordinary transaction conducted in the regular course of business between brokers. It possesses no attributes of any exception. There is neither proof nor presumption to sanction or support a ruling removing this transaction from the principles of law applicable to the purchase and sale of stock applied by the established precedents.

For these reasons I conclude that the plaintiff Rubinstein have judgment over against Englander, Birnbaum & Co. and the latter have judgment against M. S. Wien & Co., and the latter have judgment against Lawson & Co., for $500, with interest at six per cent from July 6, 1932 (the date of the order of assessment made by the Superintendent of Banks).